must be satisfied with the proceeds; but it would be a dangerous anomaly, when the prize law authorized a specific restitution, to allow an officer of an executive department, not acting under the orders of the court, and not responsible to the court, to seize and sell the property for purposes having no relation to the law of prize, the rights of the parties, or the belligerent rights of the government.' There would also be many practical inconveniences in such a course. The documents by which the quantity, character, and history of the property are to be ascertained are in the strict custody of the court until a certain stage of the proceedings, not to be seen by the parties; and the court, responsible under the law of nations, would not be justified in delivering them to the collector, nor, under some circumstances, in permitting him to see them. Neither can this court exercise any control as to the manner in which the collector shall sell the property, the expenses he may subject it to, or the disposal he may make of the proceeds.

In this view of the effect of such a course, the language of the statute must be very clear, or there must be something like a necessity to sanction it. Neither a necessity nor a policy is apparent. This claim rests upon the assumption that the cotton is liable to this tax, and that, if not collected before the sale, it would be a lien thereon in the hands of the purchaser; whether such a lien would exist after the sale, or the purchaser in any way be liable for such tax, I express no opinion. But, supposing the assumption to be correct, and the cotton liable to the tax in the hands of the purchaser, I see no necessity, nor even reasons of policy, that would authorize the marshal to assume the payment of the tax. If the collector obtains the tax from the purchaser instead of from the marshal, the result is that the cotton sells for just so much less. The government gets its tax less the collector's commission in either event. It is the same thing to the purchaser, if he understands his position. The captor loses one-half the amount of the tax in either event; but if the purchaser pays the entire value, and the marshal pays the tax to the collector, the captors and the government lose also the marshal's commission on so much of the proceeds as represent the amount of the tax.

There are the strongest reasons of policy against this demand. It is of the utmost importance that prize property should be dealt with by a court recognized by the law of nations; and I cannot think that congress intended that the government should collect a tax for its own benefit out of its own property, or property for which it is responsible, by a proceeding so anomalous, and attended with so many dangers and inconveniences.

But the marshal, in good faith and in the exercise of his judgment, for the benefit of the sale, agreed that the tax should be paid from the proceeds; and the collector, in the faith of that, allowed the cotton to pass into consumption; and the captors, it is said, have had the

benefit of the arrangement. Still the marshal acted in an official, and not in a personal capacity. He may subject the cotton to expenses when necessary for its preservation; but this property could not have been taken out of his hands by the collector, and no necessity existed which could authorize him to make any contract subjecting the proceeds to this claim. The most that can be said is, that, by this arrangement, the purchaser, by being assured that he would not be liable to the lien, gave more for the cotton than he would if he was to receive it subject to that incumbrance; that is to say, that the marshal, for the sake of enhancing the price, undertook that the purchaser should be relieved from a burden that would be consequent upon his purchase. Now it cannot be admitted that a marshal can burden property in his hands by arrangements of this nature. They rest upon no necessity or policy, and might be carried to a dangerous extent if the principle were admitted. I am satisfied that the claim for the tax against the proceeds must be disallowed.

---

## Case No. 16,939.

### VIDAL v. PHILADELPHIA.

[Cited in Miller v. Lerch, Case No. 9,579. See Vidal v. Mayor, etc., of Philadelphia, Executors of Stephen Girard, 43 U. S. (2 How.) 127.]

---

## Case No. 16,940.

### VIESCA v. WYCHE.

[3 Woods, 336.] [1]

Circuit Court, W. D. Texas. June Term, 1878.

TRESPASS TO TRY TITLE — NECESSARY PROOFS — MEXICAN GRANTS—DOCUMENTARY EVIDENCE—ARCHIVAL RECORDS.

1. Under the statute law of Texas, it is not necessary, in an action of trespass to try title, to prove an actual trespass by defendant, except in cases where there is no controversy about the title, but only as to boundaries, and where the plaintiff having the superior title charges the defendant with trespassing on his land.

2. The document offered in evidence in this case as a link in plaintiff's title, dated at Monclova, March 18, 1835, signed by José Benito Camacho Y. Estrada, as deputy secretary, or second clerk, purporting to be an appointment by José Maria Cantu, ad interim governor of Coahuila and Texas, of José Maria Balmaceda, as commissioner for the distribution of lands to the colonists of the empressarios MacMullen and McGloin, is valid and genuine.

3. The document purports to be an original or protocol, has all the appearance of being such, is authenticated by the seal of the state, and there is no suggestion that it is a forged instrument.

4. The fact that the document is signed by the deputy and not by the principal secretary, is not fatal to its validity. The deputy secretary was considered competent at that time to sign decrees of the government.

5. In this case the principal secretary, José Maria Falcon, was the attorney of Viesca, the grantee of the title, and made the application to

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]